David C. Kresin (019858)
Samuel R. Randall (024517)
ROBAINA & KRESIN PLLC
5343 N. 16th Street, Ste. 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile:  (602) 682-6455
dck@robainalaw.com
srr@robainalaw.com
Attorneys for Plaintiff/Judgment Creditor

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Ryan Warren,<br><br>　　Plaintiff-Judgment Creditor,<br>vs.<br><br>Scottsdale Treatment Institute, PLC,<br><br>　　Defendant-Judgment Debtor. | No. 2014-CV-01497-PHX-SRB<br><br>**RESPONSE TO RULE 59(A) MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE RULE 59(E) MOTION TO ALTER OR AMEND THE JUDGMENT BECAUSE THE DAMAGE AWARD IS EXCESSIVE** |

In its motion, Scottsdale Treatment Institute, PLC ("STI") argues that the jury's damages award was excessive or unjustified in two instances—the $85,000 emotional distress damages award under the retaliation claims and the pre-June 13, 2011 minimum wages awarded under the Arizona Minimum Wage Act claim. Neither of those awards were "grossly excessive or monstrous or shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988). Moreover, STI waived its argument regarding the alleged lack of evidence of minimum wage violations before June 13, 2011 when it failed to object at trial to the jury instructions or verdict forms directing the jury to consider that time period. In any event, because the jury's award was supported by the record, the Court should deny STI's instant motion.

**I.   The Jury's $85,000 Emotional Distress Award was not Grossly Excessive, Monstrous, Shocking to the Conscience, or Unsupported by the Evidence.**

STI first argues that the jury awarded "excessive damages" for emotional distress when it awarded Mr. Warren $85,000. [Motion at p. 2, ll. 11-14.] A court should nix a jury's determination regarding non-economic damages "only rarely and in extraordinary circumstances." *Rodriguez v. Senor Frog's De La Isla, Inc.*, 642 F.3d 28, 39 (1st Cir. 2011). In reviewing the jury's damages award, the trial court must view the evidence

concerning damages in a light most favorable to the prevailing party. *See Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987). A court should not disturb a jury award of damages "unless it is clearly unsupported by the evidence [or] 'grossly excessive' or 'monstrous' or 'shocking to the conscience.'" *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988).

Neither the U.S. Supreme Court nor the Ninth Circuit Court of Appeals require that emotional distress damages be supported by "objective" evidence. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000). Indeed, significant emotional distress damages may be awarded based on testimony alone or even mere inference from circumstances. *See Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991) (reversing the district court refusal to award compensatory damages for emotional harm based on plaintiffs' testimony that they suffered emotional distress); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552-53 (9th Cir. 1980) (affirming award of emotional distress/humiliation damages to one of the plaintiffs based solely on the surrounding circumstances with no testimony regarding the distress/humiliation suffered by that plaintiff).

In *Lambert v. Ackerley*, the Ninth Circuit concluded a $75,000 award of emotional distress damages to each plaintiff was not grossly excessive or monstrous because "each plaintiff testified to the emotional toll that the illegal discharge had taken on his or her life." 180 F.3d 997, 1011 (9th Cir. 1999). Further, the Ninth Circuit and its lower courts have upheld significantly greater awards of emotional distress damages based solely on the plaintiff's testimony. *See, e.g., Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1039-40 (9th Cir. 2003) (upholding emotional distress award of $123,155 to $223,155 based on plaintiff's testimony that lost job was his dream job, that he was "troubled" when he got terminated, and that he "couldn't believe" it); *Arnold v. Pfizer, Inc.*, 31 Am. Disabilities Cas. (BNA) 431, 2015 U.S. Dist. LEXIS 6640 at * (D. Ore. Jan. 21, 2015) (upholding $500,000 emotional distress award to plaintiff based solely on her 13-year career with employer and the plaintiff's testimony regarding how the

termination impacted her).  As the *Arnold* court put it: "the jury's award is supported by the evidence, and an award of $500,000 does not 'shock the conscience.' The award is not based on speculation and guesswork, but instead is based on the jury's valuation of Arnold's emotional distress.  Therefore, Pfizer's motion for a new trial with an option for remittitur on this basis is denied." *Arnold*, 2015 U.S. Dist. LEXIS at *18.

STI argues that Mr. Warren presented no other evidence except that "he liked his job and was aggrieved by his termination." [Motion at p. 2, ll. 15-18.] Even if that were true (which it is not), the jury could have awarded $85,000 in emotional distress damages based on that testimony and the circumstances surrounding Mr. Warren's employment.  But contrary to STI's assertions, there was substantial additional evidence in Mr. Warren's testimony to support the jury's award of emotional distress damages. For example, Mr. Warren testified about how much he loved and valued his job, how it became his opportunity to give back and help people who were dealing with the same mistakes that he had made.  He testified regarding the horrible, irresponsible decision he made in response to the tragic news of his wife's cancer diagnosis in 2006 that resulted in his extreme DUI, his severe injuries, his inability to care for his sick wife, and his referral to STI for treatment.  And he testified how he lived with the regret of that horrible decision, but that his job at STI was the redeeming silver lining of that decision and how through his employment at STI, he found a career helping people. He testified about how great he felt about making a difference for others when former clients would come up to him in restaurants, tell him thank you, and buy his lunch. He testified about how troubled he felt for his struggling clients that had been relying on his support when he lost his job. He testified about how he considered the people he worked with to be like family and others testified about what a great co-worker he was.  Mr. Warren testified about his deep emotional connection to his clients and his co-workers, with whom he worked for more than seven years.  In sum, Mr. Warren provided significant testimony regarding the emotional harm that he suffered when STI wrongfully terminated his employment.

STI argues that the statements of counsel suggesting a $90,000 compensatory damages award improperly influenced the jury. But the Court instructed the jury at the beginning and end of the trial that the statements of counsel were not evidence. [*See* Dkt. 68 (Preliminary Jury Instructions) at p. 4; Dkt. 69 (Final Jury Instructions) at p. 4.] The jury is presumed to have followed the Court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *Ho v. Carey*, 332 F.3d 587, 594 (9th Cir. 2003) (court must presume a jury follows the instructions given by the trial court). Here, there is no indication and STI has presented no evidence that the jury failed to follow the Court's instructions. Moreover, there is nothing wrong with counsel proposing a number to the jury to award for emotional distress. *See Arnold*, 2015 U.S. Dist. LEXIS 6640 at *17 ("counsel are free to suggest amounts for emotional distress, but the jury must make its determination based on the evidence"). Finally, it is apparent that the jury did not follow counsel's suggestion because it awarded Mr. Warren less than what counsel suggested. In any event, counsel's statements did not improperly influence the jury in awarding emotional distress damages. Accordingly, the Court should deny STI's motion with respect to the emotional distress damages award.

**II.   The Jury's Minimum Wage Award from January 1, 2006 to July 1, 2011 was not Grossly Excessive, Monstrous, Shocking to the Conscience, or Unsupported by the Evidence.**

With respect to the minimum wage award, STI only argues that the jury's minimum wage award was unjustified because "Plaintiff did not put on any evidence of an estimation for the amount of hours worked between 2006 and June 13, 2011." [Motion at p. 3, ll. 1-19.][1] STI waived this argument by failing to object at trial either to the jury instructions or to the verdict forms that directed the jury to determine the unpaid minimum wages from January 1, 2007 to July 1, 2011. *See Zhang*, 339 F.3d at 1028

---

[1] Notably, STI does not argue that the jury used an incorrect method to calculate the damages or overstated the damages in some way. Likewise, STI does not challenge the jury's verdict with respect to the minimum wage award after June 13, 2011.

- 4 -

1  (holding party waived argument by failing to object to jury instruction, propose
2  alternative jury instruction, or otherwise raise the issue prior to the return of the verdict);
3  *Passantino*, 212 F.3d at 512 (holding post-trial argument that front pay award was
4  unsupported by evidence was waived by failure to object to jury instruction on the
5  issue).

6   If STI had an objection to submission of the minimum wage issue from January
7  1, 2007 to June 13, 2011, it could have raised that objection at trial when the Court was
8  considering jury instructions and the verdict forms. *See Passantino*, 212 F.3d at 512. If
9  STI had raised the objection, the Court could have considered whether to limit the time
10 frame for which the jury was asked to assess minimum wage damages, just as the Court
11 limited the retaliation damages instruction so exclude any lost wages based on the
12 Court's conclusion that there was insufficient evidence to instruct the jury on that
13 element of damage. Instead, without objection from STI, the Court properly instructed
14 the jury that STI admitted it had not maintained records of all hours worked each work
15 day, that such failure created a "presumption that the employer did not pay the required
16 minimum wage rate under the AMWA," and that unless STI overcame that presumption,
17 the jury "must award the Plaintiff damages in the amount that the Plaintiff should have
18 been paid for those hours worked, less what the Defendant actually paid the Plaintiff, if
19 anything, for those hours worked." [Dkt. 69 at pp. 11-12.] The Court then gave the jury
20 a stipulated verdict form directing it to determine the minimum wage damages from
21 January 1, 2007 to July 1, 2011 (among other time periods). [*See* Dkt. 72.] Accordingly,
22 STI waived this argument by failing to object to the instructions directing the jury to
23 award damages for the amount that STI should have paid Mr. Warren dating back to
24 January 1, 2007.

25  In any event, STI's argument is meritless. Where, as here, an employer has failed
26 to keep adequate records of hours worked and wages paid, "an employee has carried out
27 his burden if he proves that he has in fact performed work for which he was improperly
28 compensated and if he produces sufficient evidence to show the amount and extent of

- 5 -

that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Once the employee meets that burden, the employer bears the burden of negating the reasonable inferences from the employee's evidence or proving with precision the amount of work performed. *Id.* at 687-88.  In the absence of such evidence by the employer, the employee is entitled to damages even if only approximate.  *Id.* at 688.  "Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain."  *Id.*  When the defendant by its own wrong has prevented more precise computation of damages, "juries are allowed to act upon probable and inferential, as well as direct and positive proof." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946).

Here, there was ample evidence from which a jury could have concluded that STI owed Mr. Warren $62,653 for the time period January 1, 2007 to July 1, 2011.  That time period covers 234 weeks.  Although the jury verdict form does not break down the award each week, the jury's state minimum wage award for that time period equates to an average of $267.75 per week.  Likewise, the jury's state minimum wage award for the time periods July 2, 2011 to July 1, 2012 ($13,923/52 weeks) and July 2, 2012 to termination ($25,436/95 weeks) amounted to $267.75 per week. [Dkt. 72 at p. 2.]  Mr. Warren testified that throughout his employment, he worked 10-15 hours per week waiting for clients or performing the other uncompensated tasks required of him.  Other witnesses such as STI's witness Charles DeLong and Dan Blew corroborated Mr. Warren's testimony and, in the case of Mr. DeLong, suggested that Mr. Warren spent even more time than Mr. Warren estimated on some of the tasks such as follow up with clients. Exhibits 88-144 further corroborated that some of the uncompensated work, *i.e.* training time, was consistent from 2007 to 2012.

Without objection and consistent with the *Anderson v. Mt. Clemens Pottery* case, the Court properly instructed the jury: "Because Defendant failed to maintain the required records of Plaintiff's hours worked, you must accept Plaintiff's estimate of

- 6 -

1 hours worked unless the employer comes forward with evidence of the precise amount
2 of work performed or with evidence negating the reasonableness of the employee's
3 evidence. Damages may be awarded even though the result is only approximate." [Dkt.
4 69 at p. 21.] Here, it seems apparent that the jury approximated the same number of
5 uncompensated hours each week throughout Mr. Warren's employment, which was
6 reasonable based on STI's failure to keep records and Mr. Warren and third party
7 witnesses' testimony regarding the uncompensated time throughout their employment.

8 Using Mr. Warren's estimate of 15 hours per week, the jury could have
9 concluded that Mr. Warren was owed $267.75 per week if it used a rate of $17.85 per
10 hour. That rate was appropriate under the jury instructions and the evidence.
11 Specifically, without objection, the Court gave the following instruction:

> If the employer's compensation arrangement provides for payment only for the hours spent in productive work and does not provide payment for time spent waiting, in non-client meetings, doing paperwork and performing other nonproductive work, the compensation arrangement does not comply with the law. Nonproductive working hours must be counted and paid for. . . . **In the absence of an express agreement setting a different rate for nonproductive hours, the employee would be owed compensation for the nonproductive hours at the regular hourly rate for productive work for all hours up to 40** . . . .

17 [Dkt. 69 at p. 17 (emphasis added).] There was no evidence in the record of any express
18 agreement to compensate Mr. Warren for the "nonproductive" time and plenty of
19 evidence that Mr. Warren received no compensation for that 10-15 hours per week.
20 Exhibit 163—which was stipulated into evidence—shows that between June 2011 and
21 April 2014, the regular hourly rate for productive work ranged between $12.63 and
22 $33.08 and the overall average hourly rate for productive work throughout that time
23 frame was $18.69. [*See* Dkt. 58 (minute entry discussing stipulation regarding Exhibit
24 163).] Accordingly, it would have been reasonable for the jury to use an hourly rate for
25 productive time of $17.85 in determining the amount to be awarded to Mr. Warren for
26 the uncompensated hours from January 1, 2007 to July 1, 2011. Accordingly, the Court
27 should deny STI's motion with respect to the minimum wage award. *See Los Angeles*
28 *Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1366 (9th Cir. 1986) ("where, as here,

the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not 'play Monday morning quarterback' and supplant the jury's evaluation of the complex and conflicting evidence with our own").

### **Conclusion**

Based on the foregoing, the Court should deny STI's motion for a new trial or, in the alternative, for remittitur.

DATED this 14th day of December 2015.

                              ROBAINA & KRESIN PLLC

                              By /s/ David C. Kresin
                                  David C. Kresin
                                  Attorneys for Plaintiff

### **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December 2015, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

                              Bretton Barber
                            Barber Law Group, PLLC
                            40 N. Central Ave. #1400
                            Phoenix, Arizona 85004
                      E-mail: bretton@barberlawgroup.com
                            Attorneys for Defendant

                                By /s/David C. Kresin